IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TIMOTHY V. LEPESH,**

        Plaintiff,

v.

**MELISA DAVIDSON**, M. Gilbert Library Coordinator at O.S.P.; **A. PINKLEY-WERNZ**, Assistant of Superintend. at O.S.P.; **JEREMY M. NOFZIGER**, Hearings Officer at O.S.P. with ODOC; **OREGON DEPARTMENT OF CORRECTIONS**, employees in the State of Oregon; **JANELL D. ROCHESTER**, at SRCI; **JEFF PRIMO**; **BRANDON KELLY**, Superintendent at O.S.P.; **MELISSA A. GILBERT**, *a/k/a* M. Davidson; **MELLISSA A. DAVIDSON**, *a/k/a* M. Gilbert; **NATE LOWE**, O.S.P.; **JOE CAPPS**; **R. GOLDSTON**, Inspector; **MAUREEN ROSSI**, Legal Library Coordinator; **B. CAIN**, SRCI,

        Defendants.

Case No. 6:17-cv-00648-MO

OPINION AND ORDER

**MOSMAN, J.,**

This case comes before me on Defendants' Motion for Summary Judgment [ECF 64]. Following Defendants' motion, Plaintiff Timothy Lepesh filed various documents and motions which this court has construed as a collective Response to Defendants' motion. *See* Order [ECF 76]. Thus, for purposes of resolving the present motion, I have taken into consideration the following filings from Mr. Lepesh: (1) Motion to Strike Defendant's Motion for Summary

Judgment [ECF 69]; (2) Declaration of Lepesh in support of Motion to Strike [ECF 67]; (3) Memorandum in Support of Motion to Strike [ECF 70]; (4) (a second) Motion to Strike Defendant's Motion for Summary Judgment [ECF 71]; (5) Declaration of Lepesh in Support of Motion to Strike [ECF 72]; (a second) Declaration of Lepesh in Support of Motion to Strike [ECF 73]; and (6) Response to Defendants' Motion for Summary Judgment [ECF 79].

For the reasons stated below, I GRANT Defendants' Motion for Summary Judgment and DISMISS this case with prejudice.

## BACKGROUND

Plaintiff Timothy V. Lepesh is a prisoner in the custody of the Oregon Department of Corrections ("ODOC") currently incarcerated at the Snake River Correctional Institution ("SRCI"). Defs.' Mot. Summ. J. [ECF 64] at 1-2.

Mr. Lepesh filed his original complaint in this case on April 24, 2017. Compl. [ECF 2]. On June 7, 2017, I dismissed Mr. Lepesh's that complaint for failure to state a claim, with leave to amend. Order [ECF 5]. Mr. Lepesh eventually filed the operative Third Amended Complaint on March 5, 2019. Third Am. Compl. ("TAC") [ECF 53]. Defendants filed the present motion for summary judgment against the Third Amended Complaint on August 20, 2019. [64].

In his Third Amended Complaint, Mr. Lepesh asserts various claims under 42 U.S.C § 1983 alleging that Defendants—all employees of ODOC—violated his rights under the First and Fourteenth Amendments, and the *Ex Post Facto* Clause of the Constitution, by denying him due process and access to the courts. TAC [53] at 5-11. Specifically, Mr. Lepesh alleges that Defendants illegally confiscated and destroyed legal documents pertaining to his active post-

conviction relief ("PCR") cases,[1] denied him legal services (such as photocopying and mail services) in connection with his PCR cases, improperly sanctioned him for purportedly creating fraudulent legal documents, and improperly reviewed his legal mail outside of his presence. *Id.* Mr. Lepesh seeks declaratory and injunctive relief, including the return of his legal documents and the restoration of lost good-time credits, as well money damages totaling $7,900,000 (constituting attorney's fees, court fees, punitive damages, and economic and non-economic damages). *Id.* at 7, 11.

These general allegations arise from several discrete incidents, as alleged in the Third Amended Complaint:

1. Sometime before December 21, 2016, at Oregon State Penitentiary ("OSP"), Defendants Davidson, Pinkley-Wernz, and Nofziger—acting without a search warrant—broke into Mr. Lepesh's locked legal filing cabinet and confiscated Mr. Lepesh's "legal documents, court files, records, [] original transcripts, original exhibits and evidence, notarized affidavits, and power of attorney's documents" relevant to his PCR cases. TAC [53] at 5. Some or all of these documents were contained on a thumb drive that was confiscated. *Id.* These three Defendants then turned them over to the Oregon State Police on December 21, 2016. *Id.* The Defendants also allegedly read some of the documents, including documents purportedly protected by attorney-client privilege. *Id.*

2. On October 27, 2016, at a formal disciplinary hearing at OSP, Defendant Nofziger (a Prison Disciplinary Hearings Officer) confiscated a copy of a "legal document" from Mr. Lepesh, thus prohibiting him from filing it with "the court." TAC [53] at 6. Nofziger also

---

[1] The two PCR cases were both litigated in Marion County Circuit Court. They are: (1) *Lepesh v. Kelly*, No. 16-cv-40039; and (2) *Lepesh v. Premo*, No. 14-cv-19775. *See* Hadley Decl. [ECF 33] at ¶¶ 2-8.

allegedly denied Mr. Lepesh a continuance of the hearing before finding him in violation of prison rules and sanctioning him with a loss of 100 days of good-time credits. *Id.* at 7.

3. On multiple occasions throughout 2017 and 2018, Defendants Davidson, Prinkley-Wernz, Rochester, Rossi, Capps, and Goldston denied Mr. Lepesh various legal services and materials, including photocopies, legal mail envelopes, printing services, and filing and other mailing services. *Id.* at 5-6, 8-9. Mr. Lepesh alleges these denied requests interfered with his ability to litigate his PCR cases by delaying his efforts and causing him to miss deadlines. *Id.*

4. On May 2, 2018, Defendant Rossi, and possibly Defendants Goldston and Capps, confiscated and destroyed legal documents and other property belonging to Mr. Lepesh which he needed to litigate one of his PCR cases, causing him to miss deadlines. *Id.* at 9.

5. On May 9, 2019, Defendant Goldston wrote a false misconduct report accusing Mr. Lepesh of racketeering in order to "cover-up" the purportedly unlawful confiscation of documents on May 2, 2018. *Id.* at 10. Goldston also took another "legal document" which Mr. Lepesh needed for one of his PCR cases. *Id.* This prevented Mr. Lepesh from presenting this document at a June 21, 2018, "pre-trial" and at a "trial" on July 19, 2018. *Id.*

6. On May 23, 2018, a formal disciplinary hearing was conducted by Defendant Capps (a Prison Disciplinary Hearings Officer at SRCI) regarding the May 2, 2018, confiscation of documents and the purportedly "trump[ed]-up charges of racketeering." *Id.* at 10. Capps found Mr. Lepesh in violation of prison rules and sanctioned him to a loss of 42 days of good-time credit. *Id.*

7. Around May 31, 2018, Mr. Lepesh's attorney, Jon Weiner, mailed Mr. Lepesh legal documents relating to one of his PCR cases. TAC [53] at 10. Defendant Goldston allegedly intentionally withheld Mr. Lepesh's mail for twenty-one days then opened and read the mail outside of Mr. Lepesh's presence. *Id.* at 11. As a result, Mr. Lepesh missed critical deadlines in his PCR case. *Id.*

As will be discussed in further detail below in relation to Defendants' arguments, Mr. Lepesh's main overarching claim is that these various incidents constituted "active interference" with his right of access to the courts, specifically with his right to litigate his PCR cases. *See* Pl.'s Mot. to Strike [ECF 69] at 2.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates no issue of material fact exists, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A party cannot defeat a summary judgment motion by relying on the allegations set forth in the complaint, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Summary judgment thus should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To determine whether summary judgment is proper, the court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1281-82 (9th Cir. 1982).

## DISCUSSION

Defendants move for summary judgment on several grounds, with their arguments directly addressing the various incidents and claims described above. These arguments include: **(I)** Mr. Lepesh's claims regarding the disciplinary hearings held by Defendants Nofziger and Capps are barred by the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994); **(II)** Mr. Lepesh's access to court claims fail for multiple reasons; **(III)** the reading of Mr. Lepesh's legal mail outside of his presence was reasonably related to legitimate penological interests; **(IV)** Defendants Cain and Nofziger did not have sufficient personal involvement with the allegations in Mr. Lepesh's Third Amended Complaint; and **(V)** Defendants are entitled to qualified immunity on all access to the court claims. Mot. Summ. J. [64] at 2.

I address only Defendants' first three arguments, because I find they provide sufficient reasons to grant summary judgment in favor of Defendants on all of Mr. Lepesh's claims against all named Defendants.

### I.  *Heck v. Humphrey* and the Disciplinary Hearings

As Defendants point out, in my order dismissing Mr. Lepesh's original complaint I relied on the doctrine articulated in *Heck* in holding that Mr. Lepesh's allegations pertaining to the disciplinary hearing conducted by Defendant Nofziger failed to state a claim. Order [5] at 4 ("Even where a prisoner has a protected liberty interest in revoked good-time credits, a prisoner civil rights action [under § 1983] is not cognizable unless the decision revoking the credits has

been invalidated . . . through a proper appeal . . . .") (citing *Edwards v. Balisok*, 520 U.S. 641, 645-48 (1997)).

Mr. Lepesh's present § 1983 claims with respect to the disciplinary hearing held by Defendant Nofziger (incident two, as described above) suffer from the same deficiency. So do his claims pertaining to the disciplinary hearing conducted by Defendant Capps (incident six, as described above). In short, Mr. Lepesh's civil rights claims would necessarily implicate the validity of the judgments denying him good time credits, and thus are barred. *See Edwards*, 520 U.S. at 646. I therefore GRANT summary judgment with respect to these claims.

## II. Mr. Lepesh's Access to Court Claims

As described above, Mr. Lepesh claims that Defendants violated his First and Fourteenth Amendment rights of access to the courts. He alleges that Defendants took various actions which interfered with his ability to litigate his PCR cases and as a result he suffered actual injury because he missed deadlines and was unable to file certain legal documents with the court in those cases (see incidents one, three, four, five, and seven, as described in the background section). Specifically, Mr. Lepesh alleges that Defendants 1) confiscated and destroyed pertinent legal documents, 2) denied him assistance in mailing, copying, and printing-related services, and 3) intentionally withheld legal mail sent to him by his attorney.

The Ninth Circuit has traditionally differentiated between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference. *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011). The right to affirmative assistance does not apply in ordinary civil cases but does apply to direct or collateral attacks of sentences. *Id*. To establish a cognizable claim for a violation of the right of access to the courts, a prisoner must also allege an actual injury, which is

defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Nev. Dept. of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 348 (1996)).

Mr. Lepesh styles his access to court claims solely as instances of "active interference." *See* TAC [53] at 6-11. In substance, however, Mr. Lepesh claims that Defendants both denied him affirmative assistance and actively interfered with his efforts to litigate his PCR cases. For example, his claims that Defendants failed to provide him with access to mailing and printing-related services is better understood as an affirmative assistance claim; he wanted help and Defendants did not give it. In contrast, his allegations that Defendants confiscated and destroyed his legal documents, and that they intentionally delayed his legal mail, sound in active interference.

In their motion, Defendants devote most of their argument to explaining why the various actions that Mr. Lepesh alleges do not constitute active interference. *See* Mot. Summ. J. [64] at 6-12. In a footnote, Defendants argue that Mr. Lepesh's right to "affirmative assistance" is satisfied by the fact that he was appointed counsel in both of his PCR cases. *Id.* at 7 n.3. That is an accurate statement of law, but the principle sweeps broader than what Defendants describe. At least under the facts of this case, the fact that Mr. Lepesh was represented by appointed counsel during his PCR cases means that his right to meaningfully access the courts was entirely satisfied—regardless of whether his claims are of the "affirmative assistance" or the "active interference" variety.[2]

---

[2] In both of Mr. Lepesh's PCR cases, he was represented by appointed counsel. Hadley Decl. [33] ¶¶ 4, 7, 8. In *Lepesh v. Premo*, No. 14-cv-19775, Mr. Lepesh filed a *pro se* petition on December 18, 2014, and was appointed counsel on February 27, 2015. *Id.* ¶ 4. In *Lepesh v. Kelly*, 16-cv-40039, Mr. Lepesh filed a *pro se* petition on December 1, 2016, and was appointed counsel on December 20, 2016. *Id.* ¶¶ 3, 7.

The Ninth Circuit has held that there are a number of independent, constitutionally permissible means of achieving the objective of providing meaningful access to the courts. *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982). One such means is the offer of appointed counsel. *Id.* at 1272. "The offer of court-appointed counsel to represent [a prisoner] satisfie[s] the . . . obligation to provide meaningful access to the courts" even where, for example, that same prisoner wishes to proceed *pro se* and is denied access to a law library. *See id.* This is because when a prisoner is provided access to the courts in a constitutionally adequate manner, he "may not reject the method [of access] provided and insist on an avenue of his or her choosing." *Id.* at 1271. In other words, the First and Fourteenth Amendments guarantee meaningful access to the courts, they do not guarantee a prisoner's own preference for how he would like to access the courts.[3] Therefore, a prisoner like Mr. Lepesh has meaningful access to the courts when he is offered representation by appointed counsel even if he is frustrated in launching his own pre-trial, quasi-*pro se* efforts in addition to the efforts made by counsel. *See id.* at 1270-1272.

An appointed counsel safeguards access to the courts. Consider the scenario where prison officials impermissibly confiscate and destroy crucial legal documents or evidence in the possession of a prisoner and prevent the prisoner from contacting the court to report such abuses. A prisoner without counsel in that circumstance might indeed have his access frustrated and be left without a remedy in the courts. But a prisoner with counsel would have a means by which to seek redress from the court because the counsel could move the court for sanctions or other

---

[3] Mr. Lepesh does not assert any claims under the Sixth Amendment regarding his right to proceed *pro se*, but even if he did that would likely not change the outcome reached here. *Cf. Wilson*, 690 F.3d at 1270-71 (describing that a criminal defendant who rejects his right to counsel does not gain further rights under the Sixth Amendment to access materials, facilities, or other resources that might aid self-representation).

9 – OPINION AND ORDER

appropriate relief. Even if it were interference with communications between the inmate and his counsel that constituted the abuse, any reasonably diligent counsel would be in a position to alert the court to that interference. Of course, there may exist circumstances where an appointed counsel would be of no help and therefore meaningful access might still be denied despite the presence of counsel. But Mr. Lepesh has not presented such a case here.

Finally, assuming *arguendo* that Defendants interfered with his access to court, Mr. Lepesh has not alleged facts that demonstrate he has suffered an actual injury. He makes only conclusory statements that he has suffered "actual injury" or "actual legal injury and harm." *See, e.g.*, TAC [53] at 6, 8, 10-11. At his most specific, he asserts that he missed filing deadlines, was unable to file certain documents and briefing, and was hindered in his ability to communicate with his counsel. *Id.*; *see also* Pl.'s Mot. to Strike [69] at 3. But he does not describe what these documents and deadlines were, and how they were important to his case. He does not describe any specific claims or defenses he was unable to make, let alone any non-frivolous ones. He does not, in short, demonstrate how he suffered any actual prejudice in his PCR cases as a result of Defendants actions.

I therefore GRANT Defendants' motion for summary judgment with respect to Mr. Lepesh's claims that his right of access to the courts was violated.

### III.  The Reading of Mr. Lepesh's Legal Mail Outside of His Presence

To the extent Mr. Lepesh alleges that his First Amendment rights were violated by Defendants reading his legal mail outside of his presence—independent of any alleged delay in sending that mail—his claim also fails. *See* TAC [53] 10-11.

In general, it is a violation of an inmate's First Amendment rights for a correctional officer to open and/or read an inmate's legal mail outside the presence of that inmate, unless it

was done for purposes "reasonably related to legitimate penological interests." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1213 (9th Cir. 2017).

Here, Defendants have put forth facts averring that Defendant Goldston read Mr. Lepesh's legal mail for legitimate penological purposes. According to an affidavit submitted by Defendant Goldston, on May 23, 2018, Mr. Lepesh was found in violation of ODOC rules for having fraudulently notarized a Power of Attorney form for another inmate. Goldston Decl. [ECF 65] ¶ 12. Because of that violation, a formal request was made to review Mr. Lepesh's legal paperwork and mail going forward. *Id.* ¶ 13. That request was reviewed and approved by the SRCI Superintendent and the SCRI Inspector General on June 11, 2018. *Id.* ¶ 14.; *see also* Or. Admin. Rule ("OAR") 291-131-0030. On June 20, 2018, Defendant Goldston reviewed Mr. Lepesh's legal mail in accordance with the approved process and returned it to the mailroom that same day for delivery. Goldston Decl. [65] ¶¶ 16-17.

Mr. Lepesh has not put forth any specific facts that create a genuine dispute of material fact over whether his legal mail was read for legitimate penological interests. I therefore also GRANT Defendants' Motion for Summary Judgment as to any claim regarding the opening and reading of Mr. Lepesh's legal mail.

## CONCLUSION

For the foregoing reasons, I GRANT Defendants' Motion for Summary Judgment [64] as to all claims against all named Defendants. This case is therefore DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 13th day of January, 2019.

MICHAEL W. MOSMAN
United States District Judge